**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**EVANGELINE GEORGINA MARTINEZ,**

    **Plaintiff,**

**v.**                                                                                                            **No. 21-cv-0331 SMV**

**KILOLO KIJAKAZI,[1]**
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion for Reversal and Remand for Further Proceedings [Doc. 21] and Memorandum in Support [Doc. 22], both filed on November 23, 2021. The Commissioner responded on March 21, 2022. [Doc. 28]. Plaintiff replied on April 4, 2022. [Doc. 29]. The parties have consented to my entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the administrative law judge ("ALJ") failed to apply the correct legal standard in weighing the treating source opinions. Further, the ALJ's reasons for rejecting Dr. Freedman's opinion are not supported by substantial evidence. Accordingly, remand is warranted. The Court declines to pass on Plaintiff's other challenges at this time. The Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

**Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on January 13, 2016. Tr. 358–63. She alleged a disability-onset date of June 1, 2013. Tr. 360. Her claims were denied initially and on reconsideration. Tr. 129, 141, 155, 170. ALJ Michael Leppala held the first hearing on December 13, 2017. Tr. 79–115. He issued the first unfavorable decision on July 2, 2018. Tr. 177–92. On December 13, 2019, the Appeals Council granted review. Tr. 198. The Appeals Council remanded the case to a different ALJ to cure any Appointments Clause defect; on July 16, 2018, the Acting Commissioner of Social Security had ratified all Administrative Law Judge appointments and approved them as her own under the Constitution. Tr. 199.

On remand, the case was assigned to ALJ Penny Wilkov, and she held the second hearing on June 15, 2020. 51–78. Due to the extraordinary circumstances presented by the coronavirus disease, this second hearing was held by telephone. Tr. 10. Plaintiff appeared by telephone with her attorney. Tr. 10, 51–78. The ALJ heard testimony from Plaintiff and vocational expert ("VE") Nicole B. King. Tr. 10, 51–78.

The ALJ issued the second unfavorable decision on August 3, 2020. Tr. 31. She found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2019. Tr. 13. At step one, she found that Plaintiff had not engaged in substantial gainful activity since June 1, 2013. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: plantar fasciitis and plantar spur of the right foot, meniscal tear of the knee, lumbar degenerative disease, affective disorder (variably characterized as depression and bipolar disorder), anxiety, post-traumatic stress disorder, and obesity. *Id.* The ALJ found the following

impairments were not severe: obstructive sleep apnea, diabetes mellitus, opioid dependence, and small bowel obstruction. Tr. 13–14.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 14–16. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 16–28. The ALJ found that Plaintiff could perform a limited range of light, unskilled work. Tr. 16. Specifically, she found that Plaintiff:

> has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except she can understand, remember, and carry out simple instructions and make judgements [sic] on simple work-related decisions. [Plaintiff] retains the ability to perform low stress work, which is defined as having only occasional changes in the work setting and requiring no more than occasional decision-making. [Plaintiff] can have occasional contact with coworkers and supervisors and the public. [Plaintiff] can perform[] simple, routine tasks at a consistent pace but not a production rate pace where each task must be completed within a strict time deadline.

*Id.*

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a bank teller or head teller. Tr. 28. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 28–31. She found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claims. *Id.* The Appeals Council denied review on February 11, 2021. Tr. 1–5. Plaintiff timely filed the instant action on April 12, 2021. [Doc. 1].

**Analysis**

The ALJ failed to apply the correct legal standard in evaluating the opinions of the three treating providers. Additionally, the ALJ's reasons for rejecting Dr. Freedman's opinion are not supported by substantial evidence. Accordingly, the Court will grant the motion and remand the case for proper evaluation of the source opinions.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).[4] This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

To receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

---

[4] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).  However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary.  What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions.  *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps.  First, the ALJ must find that the opinion (a) is not supported by medical evidence and/or (b) is not consistent with the record.  Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above.  Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.  In weighing medical opinions, the ALJ generally should accord more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him.  § 404.1527(c)(1); *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  "[W]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

<u>The ALJ failed to apply the correct legal standard in weighing<br>the treating opinions, each of which described disabling limitations.</u>

In this case, there are medical source opinions from three of Plaintiff's treating providers.  One opinion is from Plaintiff's former psychiatrist, Noah Freedman, M.D.  Tr. 1307–11 (dated Oct. 17, 2017).  Two opinions are from the psychiatric nurse specialist, Christina Carlson, CNS,

who succeeded Dr. Freedman. Tr. 1801–05 (dated March 4, 2020); Tr. 2473–77 (dated June 15, 2020). And one opinion is from Plaintiff's primary care physician, Tamara Singleton, M.D. Tr. 2381–84 (dated May 12, 2020). All three providers agreed that Plaintiff suffers from disabling limitations. For example, Dr. Singleton opined that Plaintiff would be off-task more than 25% of the time and miss more than four days of work per month due to her memory and concentration problems from hypoxemia. Tr. 2381. Dr. Freedman and Nurse Specialist Carlson also agreed that Plaintiff would be off task at least 15% of the time and miss more than four days of work per month due to her psychological problems. Tr. 1311, 1805, 2477. Nevertheless, the ALJ rejected these opinions. Instead, she adopted the opinions of the State Agency medical consultants who never examined Plaintiff and who never had the benefit of seeing any of the notes from these treating providers, much less their opinions.[5] *See* Tr. 23.

    The ALJ adopted the non-examining opinions of the State Agency psychological consultants, Dr. Atkins and Dr. Raclaw. Tr. 23. She explained that these opinions were "balanced, objective, and consistent with the evidence of the record as a whole." Tr. 23. The ALJ cited portions of the treating physicians' notes, which she felt were consistent with Dr. Atkins's and Dr. Raclaw's opinions, such as Dr. Freedman's note that Plaintiff was doing well and was alert in January of 2017. Tr. 23 (citing Tr. 1143[6]). In other words, the ALJ marshaled the evidence that could support her RFC assessment first. Then—and only then—did she weigh the treating opinions against it. Tr. 23–27. The ALJ was required to determine whether the other evidence,

---

[5] The non-examining opinions were rendered on March 14, 2016, and October 7, 2016. Tr. 124, 153. Plaintiff did not begin seeing Dr. Freedman until October 24, 2016. *See* Tr. 1307, 1135. She did not begin seeing Nurse Specialist Carlson until July 2019. *See* Tr. 1801, 1759. She did not begin seeing Dr. Singleton until October 3, 2018. *See* Tr. 2381, 2301.

[6] The ALJ also cited to record page "8F/38," but there is no such page in the record, and the Court cannot identify which page she could have meant.

8

including the non-examining opinions outweighed the treating opinions. Instead, she did the opposite. The initial inquiry should have been whether the evidence supported Dr. Freedman's, Dr. Singleton's, and Nurse Carlson's opinions, not whether it supported the ALJ's RFC or the non-examining opinions. This approach was backward and requires remand.

Alternatively, the ALJ's reasons for rejecting
Dr. Freedman's opinion are not supported by substantial evidence.

The ALJ rejected Dr. Freedman's opinion, first, because she found that his report was based on Plaintiff's "subjective reports" rather than on "objective testing or clinical questioning, such as . . . a more impartial mental status examination." Tr. 24. The ALJ based this finding on Dr. Freedman's response to the question, "Please identify the particular *medical or clinical findings* which support your diagnoses and the following assessment of limitations. Please include dates and why the findings support the assessment." Tr. 23–24 (quoting Tr. 1307). Dr. Freedman answered, "report over the last 3 months at least two mostly depressed days per week with suicidal thinking. Prior to that was hearing voices 3 to 4 days per week in evening with depression nearly every day." Tr. 1307. The ALJ found that this answer showed that Dr. Freedman's report was impermissibly based on Plaintiff's own subjective reports rather than on objective findings. Tr. 24.

Subjective statements from a claimant, however, are a necessary part of a psychological examination. A psychological examiner should spend enough time listening to the claimant to obtain "a case history" and to understand her "major or chief complaints." 20 C.F.R. § 404.1519n(a)(4) and (c)(1). More to the point, though:

> The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *Langley*, 373 F.3d at 1122

> (same). The ALJ's approach of rejecting [the physician's] opinion because he based it, in part, on [the plaintiff's] responses to his psychological tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data.

*Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005). Although there may be a circumstance in which a treating psychiatrist relies on a claimant's subjective statements in a way that undermines the doctor's report, this is not it. The ALJ erred in rejecting Dr. Freedman's opinion on the ground that it was based on Plaintiff's subjective statements.

The ALJ also reasoned that Dr. Freedman must have based his opinion on Plaintiff's subjective self-reports because Dr. Freedman's report stated that Plaintiff had stopped working due to episodes of agitation "even though she testified that she had been laid off." Tr. 24. Plaintiff's testimony at both hearings was consistent that she stopped working due to mental health issues. At the most recent hearing, Plaintiff testified that she stopped working because "the responsibilities that I had and working with the public . . . just started getting overbearing [sic] for me. So that's why I think everything just started, from there it just started getting worse." Tr. 61. At the earlier ALJ hearing in 2017, the following exchange occurred between the ALJ and Plaintiff:

> Q Ms. Martinez, why did you step working at Valley National?
>
> A I started getting sick.
>
> Q Tell me, tell me what was going on?
>
> A I was getting a lot of anxiety.
>
> Q And did you resign? Were, were you laid off, or were, were you fired?
>
> A I was laid off.

Tr. 89–90. Plaintiff's testimony in 2017 that she was laid off—which was immediately preceded by testimony that she stopped working due to anxiety—simply does not undermine Dr. Freedman's report. This was not a legitimate reason to reject Dr. Freedman's report.

Next, the ALJ found that Dr. Freedman's opinion was not persuasive because it was inconsistent with the clinical findings in the record and inconsistent with his own treatment notes. Tr. 23–24, 27. To evidence inconsistency, the ALJ pointed to portions of Dr. Freedman's January 2017 note, stating that Plaintiff was alert, denied insomnia or sleep disturbance, reported mild anxiety, denied hallucinations, denied issues with concentration, and had a mildly depressed mood. Tr. 24 (citing Tr. 1143). As the ALJ saw it, this showed that Plaintiff was "actually doing well in January 2017." Tr. 20, 23, 24.

First, these portions of Dr. Freedman's note are not *in*consistent with Dr. Freedman's opinion. Second, to the extent that they could be seen as inconsistent, they are overwhelmed by contrary evidence. For example, in the same January 2017 note, Dr. Freedman also recorded, "voices worsened again even after olanzapine was increased from 10 mg to 15 mg daily, patient is afraid of acting out violently with other people. She bring supports with her wherever she goes to help contain herself." Tr. 1144. Further, "1/10/17 plan is to increase olanzapine to 20 mg because of continued voices and anxiety. Also because of continued depression will augment with l-methylfolate 10 mg daily and will cut back on the prazosin to 4 mg at bedtime to decrease oversleeping." Tr. 1145. As low as the bar is for substantial evidence in social security appeals, the ALJ's examples do not constitute (nor is the Court able to discern) substantial evidence for the ALJ's finding that Dr. Freedman's opinion is inconsistent with his treatment notes or the clinical findings in the record.

**Conclusion**

Remand is required for proper evaluation of Dr. Freedman's opinion as well as the other treating opinions. Because the RFC assessment may be changed on remand to address this error, the Court declines to address Plaintiff's other alleged errors at this time.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Reversal and Remand for Further Proceedings [Doc. 21] be **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**